FILED

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

MAR 0 6 2007

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

SAULE BUNIKYTE, by and through her          )
next friend and mother, Rasa Bunikiene,     )        Civil Action
                                            )        No.:  A07 CA 164 SS
                Plaintiff,                  )
                                            )
v.                                          )
                                            )
MICHAEL CHERTOFF, *et al.*,                 )
                                            )
                Defendants.                 )
_____       )

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
## TO PREVENT SEPARATION FROM HER MOTHER

### Introduction

Plaintiff Saule Bunikyte is a nine-year-old child in the custody of the Department of

Homeland Security, U.S. Immigration and Customs Enforcement (ICE).  Plaintiff files this

motion for a temporary restraining order pursuant to Fed. R. Civ. P. 65, to prevent ICE from

separating her from her mother, Rasa Bunikiene, in retaliation for or in response to the filing of

this lawsuit on March 6, 2007.  Both plaintiff and her mother are civil immigration detainees

currently incarcerated at the T. Don Hutto Family Residential Center ("Hutto") in Taylor, Texas,

a converted medium-security prison.  This action and the motion for a preliminary injunction

filed herewith assert plaintiff's rights as a minor child under the *Flores* Settlement and request

her immediate release from the Hutto facility.  Plaintiff and her mother realistically fear that

defendant ICE officials may respond to this lawsuit by ordering the release of plaintiff without

her mother.  To guard against this substantial threat, which would be inconceivably traumatic for

both mother and child, plaintiff seeks a restraining order barring defendants from physically

1

separating plaintiff from her mother or, in the alternative, from doing so without at least 10 days advance notice to plaintiff's counsel.

Since January 1997, the detention and release of all minors in federal immigration custody has been governed by the terms of the Stipulated Settlement Agreement in *Flores v. Meese*, No. 85-cv-4544 (C.D. Cal.) ("*Flores* Settlement"), attached hereto as Exhibit A. Plaintiff's Complaint alleges that defendant ICE officials are in flagrant violation of the terms of the *Flores* Settlement with respect to her detention at Hutto. Specifically, plaintiff alleges that defendants have failed to consider her for release to and with her mother under reasonable conditions of supervision, as required by *Flores*; have failed to place her in the least restrictive setting appropriate to her age and needs, as required by *Flores*; have failed to detain her in a licensed child-care facility, as required by *Flores*; and have detained her in conditions that fail to meet virtually every specific environmental, education, medical, recreation and other child care standard set forth in the *Flores* Settlement. Plaintiff ultimately seeks a declaratory judgment that *Flores* is binding and enforceable, and a permanent injunction requiring defendants to comply with its provisions on her behalf. In conjunction with this filing, plaintiff has also filed a separate motion for a preliminary injunction seeking her immediate release from Hutto with her mother pending a final determination on the merits of her claims.

This motion for a restraining order, however, seeks a more limited form of relief—merely to preserve the status quo until plaintiff can be released from Hutto with her mother under either a preliminary or permanent injunction. Until that time, plaintiff asks that defendants be specifically enjoined from separating her from her mother. As discussed below, plaintiff's counsel have asked counsel for defendant ICE officials to provide written assurance that no action will be taken to separate plaintiff from her mother. Defendants' counsel has declined to

provide such assurance.  In light of that fact, plaintiff is compelled to ask this Court to protect her

interests by issuing a restraining order against defendants to prevent separation.

**Argument**

The function of a temporary restraining order or preliminary injunction is to preserve the

status quo and prevent irreparable loss of rights pending a trial on the merits.  *Collum v.*

*Edwards*, 578 F.2d 110, 113 (5th Cir. 1978).  To obtain preliminary relief, plaintiff must show (1)

a substantial likelihood of success on the merits of her underlying claims; (2) a substantial threat

that she will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury

outweighs any damage the injunction might cause the defendants; and (4) that the injunction will

not disserve the public interest.  *Planned Parenthood of Houston & Southeast Tex. v. Sanchez*,

403 F.3d 324, 329 (5th Cir. 2005).  While each factor must be shown, their relative importance

will vary in each case—*i.e.*, they should be applied on a "sliding-scale basis."  *See Knights of the*

*Ku Klux Klan, Realm of La. v. East Baton Rouge Parish Sch. Bd.*, 578 F.2d 1122, 1125 (5th Cir.

1978).  "Where one or more of the factors is very strongly established, this will ordinarily be

seen as compensating for a weaker showing as to another or others."  *Id.*

A.      **Plaintiff Is Likely to Succeed on Her Claim That Defendants Are in Violation of**
        **the *Flores* Settlement.**

Plaintiff's Complaint alleges more than fifteen distinct violations of the terms of the

*Flores* Settlement by defendants in this action.  Several of these violations can be remedied only

by the immediate release of plaintiff from the Hutto facility.  Even without the benefit of

discovery or expert tours, plaintiff can show a likelihood of success on most if not all of her

claims.[1]  In particular, the merits of Counts I, II, and III of the Complaint compel the immediate

release of plaintiff to and with her mother.

> **1.      The *Flores* Settlement remains binding and enforceable, and plaintiff is a *Flores* class member.**

The *Flores* Settlement was the result of years of class action litigation on behalf of

minors detained by federal immigration authorities in often deplorable conditions.[2]  Upon

remand from the Supreme Court in *Reno v. Flores*, 507 U.S. 292, 305 (1993), class counsel for

the *Flores* plaintiffs filed voluminous evidence showing that the INS was still not in compliance

with a 1987 Memorandum of Understanding compelling the agency to improve the conditions

affecting minors in its custody.  Rather than contest plaintiffs' evidence, defendants agreed to the

terms of the *Flores* Settlement, which was approved by the Central District of California in

January 1997.  The Settlement binds ICE and defendant ICE officials, as the successors of the

INS.  *See* Ex. A ¶ 1.  Created in March 2003, ICE combines the law enforcement arms of the

former INS and the former U.S. Customs Service.

The original termination provision of the 1997 *Flores* Settlement, *see* Ex. A ¶ 40, was

modified by a December 12, 2001 Stipulation and Order extending the terms of the Settlement.

The 2001 Stipulation and Order, attached hereto as Exhibit B, states:

> All terms of this Agreement shall terminate 45 days following defendants'
> publication of final regulations implementing this Agreement.  Notwithstanding
> the foregoing, the INS shall continue to house the general population of minors in
> INS custody in facilities that are state-licensed for the care of dependent minors.

---

[1]      Filed herewith, plaintiff also submits a motion for a preliminary injunction requesting *inter alia* that
plaintiff's counsel and her experts be permitted to tour Hutto and speak with plaintiff and her mother.

[2]      *See* Complaint section entitled "The *Flores* Settlement" at 9-10, summarizing history of the *Flores*
litigation.

Ex. B ¶ 1.  The INS, and now ICE, has never issued final regulations implementing the

terms of the *Flores* Settlement.  Thus, by the plain language of the Settlement, its terms

remain binding and enforceable on defendants.

Until a judicial determination that ICE is in substantial compliance with the requirements

of the *Flores* Settlement—a determination that has never been made or requested by defendants

in *Flores*—Judge Robert J. Kelleher of the Central District of California retains jurisdiction over

the Settlement.  Ex. A ¶ 35.  While classwide enforcement actions should be filed before Judge

Kelleher under the terms of the Settlement, *id.* ¶ 37, the Settlement clearly contemplates and

provides for the filing of individual enforcement actions by *Flores* class members to protect their

right under the Settlement, *id.* ¶ 24.  Specifically, the Settlement provides that:

> Any minor who disagrees with the INS's determination to place that minor
> in a particular type of facility, or who asserts that the licensed program in which
> he or she has been placed does not comply with the standards set forth in Exhibit
> 1 attached hereto, may seek judicial review in any United States District Court
> with jurisdiction and venue over the matter to challenge that placement
> determination or to allege noncompliance with the standards set forth in Exhibit 1.
> In such an action, the United States District Court shall be limited to entering an
> order solely affecting the individual claims of the minor bringing the action.

*Id.* ¶ 24B.

The certified class in *Flores* is defined as: "All minors who are detained in the legal custody of

the INS."  Ex. A ¶ 10.  The Settlement defines the term "minor" as "any person under the age of

eighteen (18) years who is detained in the legal custody of the INS."  *Id.* ¶ 4.  Thus, plaintiff is a

member of the *Flores* Class and is entitled to all the protections derived from the Settlement,

including the right to enforce her rights before this Court.

2.      **Plaintiff has raised serious questions about defendants' compliance with the *Flores* Settlement.**

Plaintiff is not required to prove her case to show a likelihood of success on the merits. *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991). "It is enough that the movant has raised questions going to the merits so substantial as to make them a fair ground for litigation and thus for more deliberate investigation." *Finlan v. City of Dallas*, 888 F.Supp. 779, 791 (N.D. Tex. 1995) (citing *Lakedreams* at 1109). Plaintiff clearly raises serious questions about defendants' compliance with *Flores* that require further litigation and investigation in this case.

Count I of the Complaint alleges that defendants have violated the most fundamental obligation of the *Flores* Settlement—to actively and continuously seek to release minors from ICE custody. *See* Ex. A ¶¶ 14, 18. The Settlement provides that release to a parent is the highest priority preference among release options. *Id.* ¶ 14. Count II of the Complaint alleges that plaintiff's placement in a converted medium-security prison managed by a for-profit adult corrections company violates defendants' obligation under *Flores* to place plaintiff in "the least restrictive setting appropriate to the minor's age and special needs." *Id.* ¶ 11. Count III of the Complaint alleges that defendants have similarly failed to place plaintiff in a licensed child-care facility as required by the Settlement, because Hutto is unlicensed by any appropriate state agency and fails to meet many of the additional *Flores* requirements for a "licensed program." *Id.* ¶¶ 6, 19 and Exhibit 1 to the Settlement. Finally, plaintiff's many additional claims raise serious questions about violations of specific environmental, education, medical, recreation and other standards set forth in the *Flores* Settlement.

The declarations of plaintiff and other children at Hutto, and some of their parents, attached hereto as Exhibits G through P, attest to the depressing, prison-like environment at the facility, and to the correctional model of prison management that is imposed by staff. More

6

declarations and testimony from current and former Hutto detainees can bolster this record at the requested hearing on plaintiff's separate motion for a preliminary injunction seeking her immediate release from Hutto.  In addition, a recently released report entitled *Locking up Family Values: The Detention of Immigrant Families*, produced by the Women's Commission for Refugee Women and Children and Lutheran Immigration and Refugee Service ("Women's Commission Report"), includes extensive information on the Hutto facility based on numerous interviews with detained children and families, conversations with facility staff, and interviews with local and national ICE staff, including defendant John Pogash, the ICE National Juvenile Coordinator.  (*See* Attachment 1 to the Declaration of Vanita Gupta, attached hereto as Exhibit C, at 48.)  The Women's Commission Report confirms many of the specific factual assertions made by plaintiff, including that Hutto is not licensed, *id.* at 36-37; and that ICE has made no effort to develop release alternatives to family detention, *id.* at 36—and thus no effort to actively and continuously seek the release of plaintiff as required by *Flores*.  The report as a whole, in conjunction with the declarations from Hutto detainees, strongly suggests that plaintiff will be able to gather evidence establishing that, far from being the "least restrictive setting" appropriate to her age and needs, Hutto is among the *most* restrictive settings in which plaintiff could be detained.  Based on this showing, plaintiff has demonstrated that there is a substantial likelihood she will prevail on at least one, if not several, of her ultimate claims that defendants are in violation of the *Flores* Settlement.

**B.      There Is a Substantial Danger That Plaintiff Will Suffer Irreparable Psychological Trauma If the Injunction Is Not Granted.**

To show irreparable injury in a preliminary injunction context, it is not necessary to demonstrate that the harm is inevitable.  *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986).  Plaintiff need only show "a significant threat of injury from the impending action, that

the injury is imminent, and that money damages would not fully repair the harm." *Id.*; *see also*

*Cohen v. Coahoma County, Miss.*, 805 F.Supp. 398, 405 (N.D. Miss. 1992) (to establish the

existence of a real, immediate danger from defendants' official conduct, prisoner did not have to

show that defendants were presently engaging in the conduct, only that there was "a genuine

threat of enforcement"). In this instance, plaintiff can show both a significant threat that

defendants will respond to this lawsuit by separating her from her mother, and a near certainty

that she would suffer significant psychological harm as a result.

**1. There is a significant chance that defendants will respond to this lawsuit by releasing plaintiff without her mother.**

Defendants have not agreed to stipulate in writing that they will not separate plaintiff

from her mother in retaliation for or in response to plaintiff's assertion of rights under the *Flores*

Settlement. Plaintiff's counsel faxed two letters to counsel for defendant ICE officials, pursuant

to ¶ 24E of the Settlement, notifying such counsel that plaintiff and a number of other minor

detainees at Hutto were asserting their rights under *Flores*, and asking for their immediate

release to and with their parent(s) under reasonable conditions of supervision.[3] (*See* 2/21/07

Letter to Johnny Sutton and 3/1/07 Letter to Victor Lawrence, Ex. C, Attachments 2 and 3.) In

the March 1, 2007 letter, plaintiff's counsel explicitly requested "an assurance in writing that

ICE will not retaliate against our clients by separating them from their parents, or attempt to

comply with *Flores* by releasing them from Hutto without their parents' consent." Ex. C,

Attach. 3. Plaintiff's counsel has received no substantive response to either of these letters.

Recent experience confirms the concern among plaintiff's counsel that ICE may transfer or

release plaintiff immediately after the filing of her lawsuit. Several of plaintiff's counsel

---

[3]     These letters also constituted an attempt to confer in good-faith prior to the filing of this motion for preliminary relief, consistent with Local Rule CV-7(h).

recently filed an amended complaint against ICE officials—including two officials named as defendants in this action—on behalf of immigration detainees at a facility in Otay Mesa, California, alleging chronic and severe overcrowding. *See Kiniti v. Myers*, Case No. 05-cv-1013 (S.D. Cal.). Within one week of that filing, four out of the five named plaintiffs in the amended class action complaint were transferred out of the San Diego facility by ICE officials. (*See* Declaration of Gouri Bhat, attached hereto as Exhibit D ¶¶ 2-4.) Finally, many families detained at Hutto report that separation is used as a constant threat by facility staff to control their behavior and frighten the children. *See, e.g.,* Ex. J ¶ 9; Ex. K ¶¶ 3-5; Ex. L ¶ 6; Ex. M ¶¶ 6-7; Ex. G ¶¶ 4, 6; Ex. H ¶ 7. For these reasons, in an abundance of caution, plaintiff files this motion for a restraining order to prevent a similar precipitous transfer or release of plaintiff without her mother in response to this lawsuit.

### 2.   Plaintiff will suffer irreparable psychological harm if separated from her mother.

Plaintiff submits two declarations from experts in the psychological effects of trauma on children and adolescents. (*See* Declaration John Sargent, M.D. and Declaration of David R. Blackburn, Ph.D., attached hereto as Exhibits E and F.) Both experts concur that the involuntary removal of children from their parents can cause them to suffer long-lasting psychological harm, particularly when those children have already experienced adversity, trauma and disruption during their young lives. Dr. David R. Blackburn states that "children who are detained in a prison-like setting will very likely suffer psychological harm and trauma from that event" and this trauma "might later contribute to childhood depression, anxiety, and/or stress." Ex. F ¶ 4. Dr. John Sargent states that "[t]he experience of being detained in a prison-like environment, for even relatively short periods, is extremely stressful for children and families and may represent retraumatization and reenactment for these children." Ex. E ¶ 3. Both experts similarly concur

that the child's relationship with her parent(s) in this context is crucial to psychological healing and that forced separation would undoubtedly exacerbate the experience of trauma for these children. Dr. Blackburn states that "[i]f these children are involuntarily removed from their parents, they will most likely suffer severe and long-lasting psychological trauma." Ex. F ¶ 5. Dr. Sargent states that "the key element identified to be necessary for the healing of children after trauma is the child's caring relationship with his [or her] mother and/or father," and that children at Hutto are "uniquely vulnerable to serious psychological ill effects of separation from their mothers or fathers." Ex. E ¶ 3.

The declaration of plaintiff's mother underscores plaintiff's unique vulnerability and the likelihood that she will suffer emotional and psychological trauma if involuntarily removed from her mother. Plaintiff is a nine-year-old girl who has been detained at the Hutto facility for 82 days. Compl. ¶ 1. She is originally from Lithuania and is detained with her mother and her older sister. *Id.* ¶¶ 12-13. On one occasion, plaintiff witnessed a guard at Hutto threaten to take away the children of an Iraqi woman when she entered her husband's cell to provide him with cleaning products. Declaration of Rasa Bunikiene ¶ 4 (attached hereto as Exhibit G). Plaintiff would be extremely traumatized if she were separated from her mother, and both she and her mother live in fear of this possibility. *Id.* ¶ 6. Thus, plaintiff's individual history and emotional state establish that separation could be extremely harmful.

Plaintiff's factual submissions more than satisfy the requirement to show irreparable harm if the restraining order is not issued.

**C.     Defendants Will Suffer No Harm by Maintaining the Status Quo, and the Public Interest Will Not Be Disserved.**

When preliminary injunctive relief is sought "against public institutions and against public servants charged with the enforcement of the law," it is appropriate to consider the third

and fourth prerequisites to relief together. *Spiegel v. City of Houston*, 636 F.2d 997, 1002 (5th Cir. 1981). This is because the public always has an interest in ensuring that public officials act within the bounds of the law and respect the rights of individuals, regardless of any specific harm that defendant officials may suffer from the requested injunction. *See Finlan*, 888 F. Supp. at 791. In this instance, the balancing of equities is straightforward because defendants will not be injured in any respect by an order barring the separation of plaintiff from her mother. Indeed, the requested restraining order merely preserves the status quo until a determination on the merits of plaintiff's claims for immediate release from Hutto to and with her mother. Thus, plaintiff's compelling interest in avoiding irreparable psychological harm is the overriding consideration in this balance of equities, and is only intensified by the considerable public interest in ensuring the safety and well-being of children detained by ICE in this district. Plaintiff thus satisfies the third and fourth requirements for preliminary injunctive relief.

### D.      Defendant Will Incur No Costs, and No Bond Is Needed.

Although Fed. R. Civ. P. 65(c) requires security to be posted before a restraining order is granted, district courts have discretion to require no security. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Defendant will incur no costs in maintaining the status quo and in not separating plaintiff from her mother. No bond is necessary.

### Relief Requested

Plaintiff requests expedited consideration of her motion for a restraining order, but does not specifically request a hearing on the motion. The motion and all supporting papers have been served on all individual defendants, the U.S. Attorney for Western District of Texas, and Department of Justice attorneys representing defendant ICE officials. Plaintiff will withdraw

this motion if defendants stipulate in writing that plaintiff will not be physically separated from her mother during the pendency of this litigation.

Assuming that such stipulation is not forthcoming, plaintiff requests that the Court enter a restraining order barring defendants from physically separating plaintiff from her mother or, in the alternative, from doing so without at least 10 days advance notice to plaintiff's counsel.

## **Conclusion**

For the reasons set forth above, plaintiff's Motion for a Temporary Restraining Order to Prevent Separation from Her Mother should be granted.

Dated: March 6, 2007.

Respectfully submitted,

Barbara Hines
Texas State Bar No. 09690800
Director – Immigration Clinic
THE UNIVERSITY OF TEXAS SCHOOL
OF LAW
727 E. Dean Keeton Street
Austin, TX 78705
(512) 232-1310

Lisa Graybill*
AMERICAN CIVIL LIBERTIES UNION
OF TEXAS
P.O. Box 12905
Austin, TX 78711
(512) 478-7300

Vanita Gupta*
Elora Mukherjee*
Dennis Parker*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION – Racial Justice Program
125 Broad Street, 18th Floor
New York, NY 10004

12

(212) 549-2500

Gouri Bhat*
Tom-Tsvi M. Jawetz*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION – National Prison Project
915 15th Street, NW, 7th Floor
Washington, DC 20005
(202) 393-4930

Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION – Immigrants' Rights
Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Sean Gorman
LEBOEUF, LAMB, GREENE &
MACRAE, LLP
Reliant Energy Plaza
1000 Main Street, Suite 2550
Houston, TX 77002
(713) 287-2000

* indicates *pro hac vice* motion pending

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by first class U.S. mail, on Tuesday, March 6, 2007, on the following:

Victor Lawrence (via Federal Express overnight delivery)
Department of Justice
Office of Immigration Litigation
National Press Building
529 14th St., NW
Washington, D.C. 20045

Michael Chertoff, Secretary
U.S. Department of Homeland Security
Washington, D.C. 20528

Julie L. Myers, Assistant Secretary
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Washington, D.C. 20528

John P. Torres, Director
Office of Detention and Removal Operations
801 I St., NW
Suite 900
Washington, DC 20536

Gary Mead, Assistant Director
Office of Detention and Removal Operations
801 I St, NW
Suite 900
Washington, DC 20536

Marc Moore
ICE Field Office Director, San Antonio
8940 Fourwinds Drive
San Antonio, TX 78239

Simona Colon
T. Don Hutto Residential Center
1001 Welch St., P.O. Box 1063
Taylor, Texas 76574

John Pogash
ICE National Juvenile Coordinator
Department of Homeland Security
Immigration & Customs Enforcement
800 I Street, NW, Suite 900
Washington, D.C. 20536

Johnny Sutton
U.S. Attorney for the Western District of Texas
United States Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

Alberto Gonzales
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Vanita Gupta

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

SAULE BUNIKYTE, by and through her )
next friend and mother, Rasa Bunikiene, )
                                 )
           Plaintiff         )
                                 )
v.                                )
                               )
MICHAEL CHERTOFF, *et al.*, )
                               )
          Defendants.     )
_____ )

Civil Action
No.: **A07 CA 164 SS**

**[PROPOSED] ORDER**

Plaintiff's Motion for a Temporary Restraining Order to Prevent Separation from Her

Mother is GRANTED; and it is hereby ORDERED that defendants shall not physically separate

plaintiff from her mother during the pendency of this action.

Austin, Texas this ____ day of _____, 2007

_____
United States District Judge