FILED
MAR 0 6 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| SAULE BUNIKYTE, by and through her next friend and mother, Rasa Bunikiene, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL CHERTOFF, *et al.*, <br><br> Defendants. | Civil Action <br> No.: **A07 CA 164 SS** |

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION ORDERING HER IMMEDIATE RELEASE FROM HUTTO WITH HER MOTHER UNDER CONDITIONS OF SUPERVISION, AND PERMITTING HER COUNSEL AND EXPERTS TO INSPECT THE FACILITY AND EXAMINE PLAINTIFF**

<u>Introduction</u>

Plaintiff Saule Bunikyte is a nine-year-old child in the custody of the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE). Plaintiff is detained with her mother at the T. Don Hutto Family Residential Center ("Hutto"), a converted medium-security prison in Taylor, Texas. Plaintiff files this motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65 seeking her immediate release from Hutto with her mother, subject to reasonable conditions of supervision. Plaintiff also asks that the Court order defendants to permit plaintiff's counsel and her experts in psychology and juvenile conditions of confinement to inspect Hutto and speak with plaintiff and her mother prior to any hearing on this motion.

Plaintiff's Complaint asserts her rights under the Stipulated Settlement Agreement in *Flores v. Meese*, No. 85-cv-4544 (C.D. Cal.) ("*Flores* Settlement"). Since January 1997, the detention and release of all minors in federal immigration custody has been governed by the

1

terms of the *Flores* Settlement, attached hereto as Exhibit A. Plaintiff's Complaint alleges that defendant ICE officials are in flagrant violation of *Flores* with respect to her detention at Hutto. Specifically, plaintiff alleges that defendants have failed to consider her for release to and with her parent under reasonable conditions of supervision, as required by *Flores*; have failed to place her in the least restrictive setting appropriate to her age and needs, as required by *Flores*; have failed to detain her in a licensed child-care facility, as required by *Flores*; and have detained her in conditions that fail to meet virtually every specific environmental, education, medical, recreation and other child care standard set forth in the *Flores* Settlement. Plaintiff ultimately seeks a declaratory judgment that *Flores* is binding and enforceable, and a permanent injunction requiring defendants to comply with its provisions on her behalf.

In this motion, plaintiff seeks preliminary relief ordering her immediate release from Hutto with her mother, subject to reasonable conditions of supervision—including electronic monitoring if necessary—pending a final determination on the merits of her claims. Such preliminary relief is warranted because plaintiff could suffer irreparable physical, psychological and developmental harm from her ongoing incarceration in the prison-like environment at Hutto; because plaintiff is significantly likely to prevail on her ultimate claims that her detention at Hutto violates her rights under the *Flores* Settlement; and because defendants' immigration enforcement concerns would be adequately addressed by releasing plaintiff and her mother under conditions of supervision.

## Argument

The function of a preliminary injunction is to prevent the irreparable loss of rights pending a trial on the merits. *Collum v. Edwards*, 578 F.2d 110, 113 (5th Cir. 1978). To obtain preliminary relief, plaintiff must show (1) a substantial likelihood of success on the merits of her

underlying claims; (2) a substantial threat that she will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any damage the injunction might cause the defendants; and (4) that the injunction will not disserve the public interest. *Planned Parenthood of Houston & Southeast Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). While each factor must be shown, their relative importance will vary in each case—*i.e.*, they should be applied on a "sliding-scale basis." *See Knights of the Ku Klux Klan, Realm of La. v. East Baton Rouge Parish Sch. Bd.*, 578 F.2d 1122, 1125 (5th Cir. 1978). "Where one or more of the factors is very strongly established, this will ordinarily be seen as compensating for a weaker showing as to another or others." *Id.*

    **A.**     **Plaintiff Is Likely to Succeed on Her Claim That Defendants Are in Violation of the *Flores* Settlement.**

Plaintiff's Complaint alleges more than fifteen distinct violations of the terms of the *Flores* Settlement by defendants in this action. Several of these violations can be remedied only by the immediate release of plaintiff from the Hutto facility. Even without the benefit of discovery or expert tours, plaintiff can show a likelihood of success on most if not all of her claims. In particular, the merits of Counts I, II, and III of the Complaint compel the immediate release of plaintiff to and with her parent.

    **1.**     **The *Flores* Settlement remains binding and enforceable, and plaintiff is a *Flores* class member.**

The *Flores* Settlement was the result of years of class action litigation on behalf of minors detained by federal immigration authorities in often deplorable conditions.[1] Upon remand from the Supreme Court in *Reno v. Flores*, 507 U.S. 292, 305 (1993), class counsel for the *Flores* plaintiffs filed voluminous evidence showing that the INS was still not in compliance

---

[1] *See* Complaint section entitled "The *Flores* Settlement" at 9-10, summarizing history of the *Flores* litigation.

3

with a 1987 Memorandum of Understanding compelling the agency to improve the conditions affecting minors in its custody. Rather than contest plaintiffs' evidence, defendants agreed to the terms of the *Flores* Settlement, which was approved by the United States District Court for the Central District of California in January 1997. The Settlement binds ICE and defendant ICE officials, as the successors of the INS. *See* Ex. A ¶ 1. Created in March 2003, ICE combines the law enforcement arms of the former INS and the former U.S. Customs Service.

The original termination provision of the 1997 *Flores* Settlement, *see* Ex. A ¶ 40, was modified by a December 12, 2001 Stipulation and Order extending the terms of the Settlement. The 2001 Stipulation and Order, attached hereto as Exhibit B, states:

> All terms of this Agreement shall terminate 45 days following defendants' publication of final regulations implementing this Agreement. Notwithstanding the foregoing, the INS shall continue to house the general population of minors in INS custody in facilities that are state-licensed for the care of dependent minors.

Ex. B ¶ 1. The INS, and now ICE, has never issued final regulations implementing the terms of the *Flores* Settlement. Thus, by the plain language of the Settlement, its terms remain binding and enforceable on defendants.

Until a judicial determination that ICE is in substantial compliance with the requirements of the *Flores* Settlement—a determination that has never been made or requested by defendants in *Flores*—Judge Robert J. Kelleher of the Central District of California retains jurisdiction over the Settlement. Ex. A ¶ 35. While classwide enforcement actions should be filed before Judge Kelleher under the terms of the Settlement, *id.* ¶ 37, the Settlement clearly contemplates and provides for the filing of individual enforcement actions by *Flores* class members to protect their right under the Settlement, *id.* ¶ 24. Specifically, the Settlement provides that:

> Any minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit

4

>1 attached hereto, may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1. In such an action, the United States District Court shall be limited to entering an order solely affecting the individual claims of the minor bringing the action.

*Id.* ¶ 24B.

The certified class in *Flores* is defined as: "All minors who are detained in the legal custody of the INS." Ex. A ¶ 10. The Settlement defines the term "minor" as "any person under the age of eighteen (18) years who is detained in the legal custody of the INS." *Id.* ¶ 4. Thus, plaintiff is a member of the *Flores* Class and is entitled to all the protections derived from the Settlement, including the right to enforce her rights before this Court.

### 2. Defendants have failed to comply with *Flores*, including their obligation to release plaintiff with her mother under reasonable conditions of supervision.

Count I of the Complaint alleges that defendants have violated the most fundamental obligation of the *Flores* Settlement—to actively and continuously seek to release minors from ICE custody. *See* Ex. A ¶¶ 14, 18. The Settlement provides that release to a parent is the highest priority preference among release options. *Id.* ¶ 14. Yet defendants have offered no explanation as to why plaintiff has not been released with her mother under reasonable conditions of supervision. Defendants have never suggested that plaintiff or her mother pose any danger that requires their confinement. Thus the only legitimate purpose their continued detention can serve is to assure their appearance at removal proceedings or for ultimate removal, if ordered. Given that plaintiff and her mother are prepared to agree to any reasonable conditions of supervision, including electronic monitoring if necessary, the *Flores* Settlement requires their release.

Count II of the Complaint alleges that plaintiff's placement in a converted medium-security prison managed by a for-profit adult corrections company violates defendants'

5

obligation under *Flores* to place plaintiff in "the least restrictive setting appropriate to the minor's age and special needs." *Id.* ¶ 11. Count III of the Complaint alleges that defendants have similarly failed to place plaintiff in a licensed child-care facility as required by the Settlement, because Hutto is unlicensed by any appropriate state agency and fails to meet many of the additional *Flores* requirements for a "licensed program." *Id.* ¶¶ 6, 19 and Exhibit 1 to the Settlement. Finally, plaintiff's many additional claims raise serious questions about violations of specific environmental, education, medical, recreation and other standards set forth in the *Flores* Settlement.

The declarations of plaintiff and other children at Hutto and some of their parents, attached hereto as Exhibits G through P, attest to the depressing, prison-like environment at the facility, and to the correctional model of prison management imposed by staff. More declarations and testimony from current and former Hutto detainees can bolster this record at the requested hearing on this motion. In addition, a recently released report entitled *Locking up Family Values: The Detention of Immigrant Families*, produced by the Women's Commission for Refugee Women and Children and Lutheran Immigration and Refugee Service ("Women's Commission Report"), includes extensive information on the Hutto facility based on numerous interviews with detained children and families, conversations with facility staff, and interviews with local and national ICE staff, including defendant John Pogash, the ICE National Juvenile Coordinator. (*See* Attachment 1 to the Declaration of Vanita Gupta, attached hereto as Exhibit C, at 48.) The Women's Commission Report confirms many of the specific factual assertions made by plaintiff, including that Hutto is not licensed, *id.* at 36-37; and that ICE has made no effort to develop release alternatives to family detention, *id.* at 36—and thus no effort to actively and continuously seek the release of plaintiff as required by *Flores*. The report as a whole, in

6

conjunction with the declarations from Hutto detainees, strongly suggests that plaintiff will be able to gather evidence establishing that, far from being the "least restrictive setting" appropriate to her age and needs, Hutto is among the *most* restrictive settings in which plaintiff could be detained.

Based on this showing, plaintiff has demonstrated that there is a substantial likelihood she will prevail on at least one, if not all, of her claims that defendants are in violation of the *Flores* Settlement. This is particularly true since plaintiff is not required to prove her case to show a likelihood of success on the merits. *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991). "It is enough that the movant has raised questions going to the merits so substantial as to make them a fair ground for litigation and thus for more deliberate investigation." *Finlan v. City of Dallas*, 888 F.Supp. 779, 791 (N.D. Tex. 1995) (citing *Lakedreams* at 1109). Plaintiff clearly satisfies this standard.

### B. There Is a Significant Likelihood That Plaintiff Will Suffer Irreparable Injury From Her Ongoing Confinement at Hutto.

To show irreparable injury in a preliminary injunction context, it is not necessary to demonstrate that the harm is inevitable. *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986). Plaintiff need only show "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Id.* The long-lasting consequences of psychological and emotional harm inflicted on young children cannot be quantified or repaired by monetary damages, which, in any event, plaintiff does not seek. Similarly, developmental harm caused by the denial of appropriate educational opportunities to children can constitute irreparable injury and has supported the entry of preliminary injunctive relief in this circuit. *See Woods v. Wright*, 334 F.2d 369, 375 (5th Cir. 1964) (reversing the denial of preliminary injunctive relief to a child who was expelled from school in retaliation for

participating in a public demonstration against segregation); *Byrd v. Livingston Indep. Sch. Dist.*, 674 F.Supp. 225, 226 (E.D. Tex. 1987) (continuing a temporary restraining order by granting permanent injunctive relief to three children who were denied enrollment in public school because of purported residency requirements).

Plaintiff can establish that there is a strong chance she will suffer irreparable psychological harm and trauma because of her ongoing and indefinite detention in a prison-like environment. Plaintiff submits two declarations from experts in the psychological effects of trauma on children and adolescents. (*See* Declaration John Sargent, M.D. and Declaration of David R. Blackburn, Ph.D., attached hereto as Exhibits E and F.) Both experts concur that the experience of being detained at Hutto, even for relatively short periods, is likely to be traumatic and stressful for children, particularly those who have already experienced adversity and disruption in their young lives. Dr. David R. Blackburn states that "children who are detained in a prison-like setting will very likely suffer psychological harm and trauma from that event" and this trauma "might later contribute to childhood depression, anxiety, and/or stress." Ex. F ¶ 4. Dr. John Sargent states that "[t]he experience of being detained in a prison-like environment, for even relatively short periods, is extremely stressful for children and families and may represent retraumatization and reenactment for these children." Ex. E ¶ 3. Plaintiff plans to obtain additional expert testimony for the preliminary injunction hearing and specifically requests that her experts be permitted to inspect the facility and examine plaintiff and her mother before the hearing date. *See* Relief Requested section, *infra*.

The declaration of plaintiff's mother underscores plaintiff's unique vulnerability and the likelihood that she will suffer emotional and psychological trauma if she is not immediately released from Hutto with her mother. Plaintiff is a nine-year-old girl who has been detained at

the Hutto facility for 82 days. Compl. ¶ 1. She arrived in the United States on March 8, 2005, and was a student in the third grade at West Elementary in Crystal Lake, Illinois until the time of her detention. *Id.* ¶ 13. At various times, plaintiff has received zero, one, and between three and four hours of education each day; the subjects covered in her class are too elementary for her grade level and she often colors during class time, watches movies, and rarely learns anything. Compl. ¶ 64. Plaintiff's mother fears that even if she is released from detention she will not be permitted to graduate from the grade that she is now in. Declaration of Rasa Bunikiene ¶ 3 (attached at Exhibit G). Plaintiff finds it difficult to eat the food provided at Hutto, often cries out of hunger, and has lost significant weight since her arrival at the facility. Compl. ¶ 54. Plaintiff often cries, and feels sad, frustrated, and angry by the trauma she has suffered and by her detention at the Hutto; her anxiety is multiplied by her fear that she will be permanently separated from her mother and will be left with no one to help her or protect her. Compl. ¶¶ 62, 80; Ex. G ¶¶ 4, 6. Thus, plaintiff's individual history and emotional state establish a substantial risk of irreparable harm should plaintiff and her mother continue to be detained at Hutto.

At the preliminary injunction hearing, plaintiff's current factual submissions will be supported by additional detainee and expert testimony regarding the lack of adequate educational services, recreation time, medical care and palatable food—all critical services for the health and development of growing children. Plaintiff can satisfy the irreparable harm requirement.

    C.    **The Balance of Equities Favors Plaintiff, and the Public Interest Will Not Be Disserved By Entry of the Requested Injunction.**

When preliminary injunctive relief is sought "against public institutions and against public servants charged with the enforcement of the law," it is appropriate to consider the third and fourth prerequisites to relief together. *Spiegel v. City of Houston*, 636 F.2d 997, 1002 (5th Cir. 1981). This is because the public always has an interest in ensuring that public officials act

within the bounds of the law and respect the rights of individuals, regardless of any specific harm that defendant officials may suffer from the requested injunction. *See Finlan*, 888 F. Supp. at 791.

In this instance, the balancing of equities is straightforward because defendants will not be injured in any respect by an order requiring the release of plaintiff with her mother under conditions of supervision. Indeed, defendants' use of the Hutto facility to detain children and families directly contravenes the expressed intent of Congress in repeatedly appropriating funds to DHS for the housing of families in non-penal, homelike environments. *See, e.g.,* Department of Homeland Security Appropriations Bill, H.R. 79, 109th Cong. (2005) ("The Committee expects DHS to release families or use alternatives to detention such as the Intensive Supervision Appearance Program whenever possible."). Defendants have put forth *no reason* why plaintiff's release with her mother under reasonable conditions of supervision would not be feasible. Defendants have never alleged that plaintiff or her mother pose any danger to themselves or others; thus, presumably, the only basis for their continued confinement is to ensure their appearance at future immigration proceedings. Because this interest can be adequately addressed by imposing conditions of supervision—including electronic monitoring if necessary—no legitimate governmental interest will be affected by the granting of preliminary injunctive relief to plaintiff.

Plaintiff's compelling interest in avoiding irreparable physical, psychological and developmental harm is the overriding consideration in this balance of equities, and is only intensified by the considerable public interest in ensuring the safety and well-being of children and families detained by ICE in this district. Plaintiff thus satisfies the third and fourth requirements for preliminary relief.

10

### D.     Defendant Will Incur No Costs, and No Bond Is Needed.

Although Fed. R. Civ. P. 65(c) requires security to be posted before a restraining order is granted, district courts have discretion to require no security. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Defendant will incur no significant costs in releasing plaintiff with her mother under reasonable conditions of supervision, or in permitting plaintiff's counsel and her experts to tour Hutto. No bond is necessary.

### Relief Requested

Plaintiff requests that the Court enter a preliminary injunction pursuant to Fed. R. Civ. P. 65 ordering (1) that plaintiff be immediately released from the Hutto facility to and with her parent under reasonable conditions of supervision; and (2) that plaintiff's counsel and her experts in psychology and juvenile conditions of confinement be permitted to inspect Hutto and speak with plaintiff and her mother prior to any hearing on this motion.

Plaintiff requests a hearing on this preliminary injunction motion as soon as practicable for the Court, ideally within the next three weeks. Plaintiff requests expedited consideration of her request that her experts be permitted to tour Hutto and meet with plaintiff, so that the expert visit may be conducted prior to the preliminary injunction hearing.

This motion and all supporting papers have been served on all individual defendants, the U.S. Attorney for Western District of Texas, and Department of Justice attorneys representing defendant ICE officials.

### Conclusion

For the reasons set forth above, plaintiff's Motion for a Preliminary Injunction Ordering Her Immediate Release from Hutto with Her Mother Under Conditions of Supervision, and

11

Permitting Her Counsel and Experts to Inspect the Facility and Examine Plaintiff should be granted.

Dated: March 6, 2007.

Respectfully submitted,

*/s/ Barbara Hines*

Barbara Hines
Texas State Bar No. 09690800
Director – Immigration Clinic
THE UNIVERSITY OF TEXAS SCHOOL OF LAW
727 E. Dean Keeton Street
Austin, TX 78705
(512) 232-1310

Lisa Graybill*
AMERICAN CIVIL LIBERTIES UNION OF TEXAS
P.O. Box 12905
Austin, TX 78711
(512) 478-7300

Vanita Gupta*
Elora Mukherjee*
Dennis Parker*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION – Racial Justice Program
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Gouri Bhat*
Tom-Tsvi M. Jawetz*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION – National Prison Project
915 15th Street, NW, 7th Floor
Washington, DC 20005
(202) 393-4930

Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION

FOUNDATION – Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Sean Gorman
LEBOEUF, LAMB, GREENE & MACRAE, LLP
Reliant Energy Plaza
1000 Main Street, Suite 2550
Houston, TX 77002
(713) 287-2000

\* indicates *pro hac vice* motion pending

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by first class U.S. mail, on Tuesday, March 6, 2007, on the following:

Victor Lawrence (via Federal Express overnight delivery)
Department of Justice
Office of Immigration Litigation
National Press Building
529 14th St., NW
Washington, D.C. 20045

Michael Chertoff, Secretary
U.S. Department of Homeland Security
Washington, D.C. 20528

Julie L. Myers, Assistant Secretary
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Washington, D.C. 20528

John P. Torres, Director
Office of Detention and Removal Operations
801 I St., NW
Suite 900
Washington, DC 20536

Gary Mead, Assistant Director
Office of Detention and Removal Operations
801 I St, NW
Suite 900
Washington, DC 20536

Marc Moore
ICE Field Office Director, San Antonio
8940 Fourwinds Drive
San Antonio, TX 78239

Simona Colon
T. Don Hutto Residential Center
1001 Welch St., P.O. Box 1063
Taylor, Texas 76574

John Pogash
ICE National Juvenile Coordinator
Department of Homeland Security
Immigration & Customs Enforcement
800 I Street, NW, Suite 900
Washington, D.C. 20536

Johnny Sutton
U.S. Attorney for the Western District of Texas
United States Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

Alberto Gonzales
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

*[signature]*
Vanita Gupta

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| SAULE BUNIKYTE, by and through her next friend and mother, Rasa Bunikiene,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, *et al.*,<br><br>Defendants. | Civil Action<br>No: **A07 CA 164 SS** |

### [FIRST PROPOSED] ORDER

Plaintiff's Motion for a Preliminary Injunction Ordering Her Immediate Release from Hutto with Her Mother Under Conditions of Supervision, and Permitting Her Counsel and Experts to Inspect the Facility and Examine Plaintiff is GRANTED IN PART; and it is hereby ORDERED that:

(1) Counsel for the parties shall appear before the Court for a hearing on Plaintiff's Motion for a Preliminary Injunction Ordering Her Immediate Release from Hutto with Her Mother Under Conditions of Supervision, and Permitting Her Counsel and Experts to Inspect the Facility and Examine Plaintiff on _____, 2007; and

(2) Prior to the aforementioned hearing, plaintiff's counsel and her psychological and juvenile conditions of confinement experts shall be permitted to inspect Hutto and speak with plaintiff and her mother.

Austin, Texas this \_\_\_\_ day of _____, 2007

_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| SAULE BUNIKYTE, by and through her next friend and mother, Rasa Bunikiene,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, *et al.*,<br><br>Defendants. | Civil Action No.: **A07 CA 164 SS** |

### [SECOND PROPOSED] ORDER

Plaintiff's Motion for a Preliminary Injunction Ordering Her Immediate Release from Hutto with Her Mother Under Conditions of Supervision, and Permitting Her Counsel and Experts to Inspect the Facility and Examine Plaintiff is GRANTED IN PART; and it is hereby ORDERED that plaintiff be immediately released from the Hutto facility to and with her mother under reasonable conditions of supervision.

Austin, Texas this _____ day of _____, 2007

_____
United States District Judge